UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHELLY MARGARET ARNDT,

    Petitioner,

v.

DEBORAH JO WOFFORD,

    Respondent.

CASE NO. 3:20-cv-05958-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: February 5, 2021

The District Court has referred this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to the undersigned, as authorized by 28 U.S.C. §§ 636(b)(1) and local Magistrate Judge Rules 3 and 4.

Petitioner is serving a sentence of life without the possibility of parole for, among other things, committing first-degree, premeditated murder. She requests habeas relief on the basis that a juror committed misconduct at petitioner's trial by reading definitions of "premeditation" on the internet.

However, petitioner has not shown that the misconduct had a substantial and injurious effect on the verdict because (1) the information that the juror recalled reading was the same as the jury's instruction regarding premeditation and (2) petitioner's argument that other information that the juror did not recall impacted her verdict relies on speculation and is contradicted by the record. Therefore, petitioner fails to show any error that is not harmless, and her petition should be denied.

**BACKGROUND**

Petitioner brought this matter in September 2020, challenging her November 2015 conviction in Kitsap County Superior Court. *See* Dkt. 3. Respondent has filed a response to the petition (Dkt. 7), and petitioner has filed a traverse to respondent's answer. Dkt. 10. The matter is now ripe for decision.

With the response to the petition, respondent filed the state court record. Dkt. 8. That record includes the following facts regarding the state court proceedings.

In 2015, following an eight-week trial (Dkt. 8-1, at 501), petitioner was convicted of two counts of murder, one count of first-degree arson, and six counts of second-degree assault. Dkt. 8-1, at 2–3. The murder convictions and arson conviction were subject to aggravating circumstances and special allegations not relevant to this petition. *See* Dkt. 8-1, at 2–3, 34. The circumstances of the crime are also not particularly relevant to this Report and Recommendation and are discussed only as necessary herein.

In October 2016, while her appeal was pending, petitioner moved for a mistrial after discovering that a juror—"Juror 2"—had committed misconduct by looking up the term "premeditation" on the internet during petitioner's trial. Dkt. 8-1, at 501. The superior court

denied the motion, finding beyond a reasonable doubt that the misconduct "could not have affected the verdict." Dkt. 8-1, at 626.

In December 2017, on direct appeal, Division Two of the Court of Appeals determined that petitioner's first-degree felony murder conviction violated double jeopardy. *See* Dkt. 8-1, at 34, 70. Therefore, the Court remanded for the felony-murder conviction to be vacated but otherwise affirmed petitioner's convictions and sentence. Dkt. 8-1, at 70.

Petitioner filed a second appeal in Division Two, challenging the trial court's ruling that Juror 2's misconduct was harmless beyond a reasonable doubt. Dkt. 8-1, at 18. In September 2018, over a dissent, Division Two again affirmed, concluding that the trial court had not abused its discretion by concluding that Juror 2's research did not contribute to the verdict. Dkt. 8-1, at 27.

On January 9, 2019, the Supreme Court denied petitioner's petition for review of Division Two's second opinion, regarding Juror 2's misconduct. *See* Dkt. 8-1, at 825; *see also* Dkt. 8-1, at 827 (mandate). And in December 2019, the Supreme Court accepted review of Division Two's first opinion and affirmed. Dkt. 8-1, at 88; *see also* Dkt. 8-1, at 485 (mandate).

Petitioner also filed a personal restraint petition ("PRP") in Division Two on May 22, 2019, challenging her conviction on the basis of Juror 2's misconduct. Dkt. 8-1, at 830, 841. Division Two dismissed the petition since the Court had already decided the issue on direct appeal. Dkt. 8-1, at 1273. On April 6, 2020, the Supreme Court issued a ruling denying review of the matter. Dkt. 8-1, at 1294; *see also* Dkt. 8-1, at 1304 (denying motion to modify the ruling). The matter became final on July 8, 2020. Dkt. 8-1, at 1306.

Separately, petitioner also filed a personal restraint petition on February 24, 2020, raising other issues unrelated to her petition in this matter. *See* Dkt. 8-1, at 1309. Division Two

transferred the petition to the Supreme Court (Dkt. 8-1, at 1473), and the matter is, according to respondent, presently pending before the Washington State Supreme Court. *See* Dkt. 7, at 6 n.3.

**DISCUSSION**

Federal habeas relief is warranted only if the petitioner establishes both that constitutional error occurred and that the error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 627, 635–38 (1993). Here, petitioner fails to show harmful error under the test set forth in *Brecht*.

Juror 2 testified before the state trial court that she had "Googled" the definition of "premeditation" and was unable to remember which websites she visited. Dkt. 8-1, at 620. However, she recalled that the "key thing in these definitions" that stuck with her was that "[o]ne of the definitions was about premeditation being short." Dkt. 8-1, at 621; *see also* Dkt. 8-1, at 622 ("I [saw] the word 'short,' that's – that's what made me understand."). She answered "[y]es" when asked, "[S]o you looked at definitions that required that there be some deliberative process for premeditation?" Dkt. 8-1, at 621. She also testified that she did not share definitions with other jurors, although this testimony was in conflict with some of her prior statements. Dkt. 8-1, at 621.

Beginning with juror 2's acknowledgement that she consulted outside research for the definition of premeditation as involving a "short" period of time, petitioner cannot show that this research had a substantial and injurious effect on the jury's verdict. As Division Two pointed out, the jury instructions also included the principle that premeditation exists no matter how short the time in which a design to kill is deliberately formed. Specifically, Instruction 22 directed the jury that—

      > Premeditated means thought over beforehand. When a person, after any deliberation, forms an intent to take human life, the killing may follow immediately after the formation of the settled purpose and it will still be premeditated. Premeditation must involve more than a moment in point of time. The law requires some time, *however long or short*, in which a design to kill is deliberately formed.

Dkt 8-1, at 675 (emphasis added).

Where a juror reviews a definition that is substantially the same as the jury instructions, the juror misconduct does not merit habeas review. *See, e.g.*, *United States v. Steele*, 785 F.2d 743, 745–49 (9th Cir. 1986) (looking up dictionary definitions of various terms, including "copyright" and "infringement," did not prejudice the verdict in a criminal copyright infringement case); *see also Mendoza v. Runnels*, 251 F. App'x 406, 408 (9th Cir. 2007) (finding harmless error under *Brecht* where the dictionary definition that a juror shared with other jurors was correct and did not alter the legal meaning of the instructions at issue or otherwise prejudice the verdict).

Petitioner argues that the error was not harmless under *Brecht* because juror 2 admitted that her realization that premeditation could be "short" or "however short" changed her verdict. *See* Dkt. 8-1, at 620 (noting that the defense investigator asked juror 2 whether the definitions helped change her mind, and juror 2 allegedly responded "yes, I think it [sic] did because it [sic] had the word short in it."). This argument fails. Had juror 2 more closely read her jury instructions, which included the same information, juror 2 would have seen substantially the same information. Petitioner cannot show harm because the juror's misconduct in fact caused the juror's understanding of the law to align more closely with her instructions. The Court notes that juror 2's alleged response to the defense investigator's question stated only that the reference to the word "short" changed her mind—not anything else that she viewed. *See* Dkt. 8-1, at 620.

Petitioner also makes much of juror 2's inability to recall the precise definitions that juror 2 reviewed when she improperly conducted internet searches regarding the meaning of "premeditation." *See* Dkt. 10. Petitioner fails to show that juror 2's viewing definitions of "premeditation," to the extent that these definitions included principles other than the length of premeditation, had a substantial and injurious effect on the verdict. *See, e.g., Cox v. Ayers*, 414 F. App'x 80, 85 (9th Cir. 2011) ("On habeas review of a claim that jurors were exposed to extrajudicial evidence before rendering a verdict, the petitioner bears the burden of establishing the extrinsic material 'had a substantial and injurious effect' on the jury's verdict.") (quoting *Fields v. Brown*, 503 F.3d 755, 776 (9th Cir. 2007) (en banc)).

In her hearing testimony, juror 2 gave no indication that any other information she viewed impacted her verdict. Indeed, she affirmatively stated that "the key thing" in the definitions that she viewed and that "stuck out to" her (Dkt. 8-1, at 621) was the information about premeditation "being short." Juror 2 also made statements before the hearing to defense and prosecution investigators, but these statements do not establish that juror 2 relied on anything other than the references to premeditation being "short" in the definitions, either. *See* Dkt. 8-1, at 618–23. Indeed, the defense investigator stated that juror 2 had allegedly told him that the "premeditation" definition "helped her change her mind" specifically because it "'had the word short in it.'" Dkt. 8-1, at 618.

Not only does petitioner's argument that juror 2 relied on information other than the idea that premeditation could be "short" (*see* Dkt. 10, at 2) rely entirely on speculation, but it is contradicted by juror 2's statements that the key part of the definitions to her was the discussion of "short." Petitioner fails to show that the juror misconduct had a substantial and injurious effect on the jury's verdict. *Accord Lytle v. Alameida*, No. C 03-4414 SI (PR), 2007 WL

3344275, at *4–*5 (N.D. Cal. Nov. 7, 2007) (ruling that error was harmless under *Brecht* where jury consulted dictionary definitions of five words that were synonymous with instructions and petitioner failed to present evidence that jury consulted any other words); *Ervin v. Davis*, No. 00-CV-01228-LHK, 2016 WL 4705691, at *6 (N.D. Cal. Sept. 8, 2016) (denying habeas relief where jurors could not consistently remember the terms looked up in a dictionary).

Because petitioner cannot show error that was not harmless under *Brecht*, the Court does not review petitioner's arguments that the state court unreasonably applied clearly established federal law. *See* Dkt. 10, at 4. Moreover, petitioner's citation to *United States v. Lawson*, 677 F.3d 629, 644 (4th Cir. 2012), is not persuasive because that case did not involve the harmless error standard under *Brecht*.

**EVIDENTIARY HEARING**

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. The Court does not find it necessary to hold an evidentiary hearing because, as discussed in this report and

recommendation, petitioner's grounds for relief may be resolved on the existing state court record.

**CERTIFICATE OF APPEALABILITY**

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of petitioner's claims or would conclude the issues presented in the petition should proceed further. Therefore, the Court concludes that petitioner is not entitled to a certificate of appealability with respect to the petition.

**CONCLUSION**

The petition for writ of habeas corpus (Dkt. 3) should be denied, and a certificate of appealability should not issue.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on February 5, 2021, as noted in the caption.

Dated this 19th day of January, 2021.

J. Richard Creatura
United States Magistrate Judge